

**SIGNED this 22 day of September, 2010.**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| In re: | No. 09-12053 |
| | Chapter 13 Debtor |
| ANTHONY CLARK MCDOWELL, | |
| Debtor; | |
| | |
| STEVE HIXSON, | |
| Plaintiff, | |
| v | Adversary Proceeding |
| | No. 09-1102 |
| ANTHONY CLARK MCDOWELL, | |
| Defendant. | |

**Memorandum**

Plaintiff Steve Hixson ("Plaintiff") has filed a motion for summary judgment pursuant to

Federal Rule of Bankruptcy Procedure 7056 regarding his claim that damages awarded to him

pursuant to a Final Order entered in the Superior Court for Dade County, Georgia on July 16, 2009 ("Final Order") [Doc. No. 41-3[1]] against the Defendant Anthony Clark McDowell ("Defendant") are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 1328(a)(2).  See [Doc. No. 41].  The Georgia state court entered the Final Order in the Plaintiff's favor and against the Defendant in the amount of one hundred thousand dollars ($100,000).  The Defendant opposes the motion for summary judgment.  [Doc. No. 42].   The court has reviewed the briefs of the parties, the record, and the relevant law and has determined that Plaintiffs' motion will be **DENIED**.

    **I.**    **Background**

For purposes of summary judgment, this court must view the facts in the light most favorable to the non-moving party, the Defendant, in this case.  The parties agree that the Defendant filed a voluntary Chapter 13 Bankruptcy Petition on April 2, 2009.  See [1:09-bk-12053 Doc. No. 1].  The Defendant agrees that at the time of the filing of his bankruptcy petition, an action for damages against Defendant was pending in the Superior Court of Dade County, Georgia based on the  damages that Defendant caused to the Plaintiff's car.  On April 27, 2009 this court modified the automatic stay to allow the state court to enter a judgment awarding damages to the Plaintiff.  See [1:09-bk-12053 Doc. No. 18].  The state court entered the Final Order on July 16, 2009 awarding the Plaintiff actual damages of $70,000, punitive damages of $20,000, and attorneys' fees of $10,000 for a total award of $100,000.  See Final Order.

The Defendant disputes all other facts that are not specifically adopted by the Georgia Superior Court in the Final Order.  See [Doc. No. 42, p. 2].  The Final Order states in its entirety:

> This matter came before the Court for a final hearing on December 12, 2008 with the Honorable Ralph Van Pelt, Jr. presiding.  After hearing testimony and receiving evidence, the Court finds as follows:

---

[1] All citations to the court's docket entries are for the docket pertaining to Adversary Proceeding 09-1102, unless otherwise noted.

Defendant performs highly skilled body work on automobiles. He developed a design to convert a newer model Corvette to look like a 1967 Corvette. However, he lacked the funds to buy and build the vehicle.

As a result, Plaintiff and Defendant entered into a contract in which Plaintiff would purchase a 1999 Corvette and then hire Defendant to make the conversion. Thus, Plaintiff purchased the vehicle and Defendant began working on the vehicle.

In compliance with the agreement, Plaintiff spent substantial funds in paying for Defendant's labors and the needed parts.

A car show was held in Chattanooga. Plaintiff and Defendant agreed to present the vehicle at the show. The conversion was substantially complete. However, the car was in unfinished condition.

At the show, Plaintiff was offered $75,000 for the vehicle. Plaintiff did not agree to sell the vehicle. However, Plaintiff and Defendant began arguing over whether Plaintiff had the authority to sell the vehicle if he chose to do so.

Defendant took the vehicle from the show. He then attempted to make molds of the vehicle so that he could use them in creating another conversion vehicle.

Subsequently, Defendant willfully and maliciously and without knowledge to the Plaintiff, cut off the body work which had been paid by the Plaintiff. Defendant continued to withhold the vehicle from the Plaintiff for an extended period of time and did not return the same until suit had been filed.

When Defendant returned the vehicle, it was basically without a body. The frame had been modified to accommodate the conversion. As a result, Plaintiff cannot simply buy another body and have it installed on the vehicle frame.

The Court concludes as a matter of law that Defendant breached his contract with Plaintiff. Furthermore, he acted without cause or excuse when he intentionally converted the vehicle for his own purposes by destroying the substantive parts of the vehicle. The Defendant's actions were both willful and malicious.

The Court concludes as a matter of law that Defendant's counterclaim is without merit. Defendant had the vehicle in his possession. If he felt that the disagreement with Plaintiff could not be resolved, he could have addressed the matter through the Court. Instead, he acted in an intentional, malicious and greedy manner.

The Defendant's testimony lacked credibility. For example, the hours which he had purportedly donated on the project obviously was [sic] untruthful.

In setting damages, the Court has considered the offer of $75,000.00. The Court has further considered the Defendant's testimony that the vehicle, in its unfinished condition, was still worth substantially over $100,000.00. The Court also has considered the Defendant's testimony that the first conversion vehicle would have special value.

The Court recognizes that the Plaintiff still has the damaged vehicle. That vehicle has value as established by the parties. As a result, in establishing damages, the Court has taken the fair market value of the vehicle immediately before the damage and subtracted the fair market value after the damage.

After considering the Defendant's willful and malicious actions in this matter, the Court Orders as follows: The Court determines the value of the

>   vehicle to be $80,000.00 with a current value of $10,000.00, therefore Plaintiff is awarded actual damages in the amount of $70,000.00. While the Court recognizes that this sum is substantially less than Defendant's own testimony as to value, the Court prefers to err on the side of being conservative in the award of damages against Defendant. Plaintiff is awarded punitive damages in the amount of $20,000.00 and Attorney's Fees in the amount of $10,000.00 for a total award of $100,000.

Final Order. As noted *supra*, the Georgia state court entered the Final Order on July 16, 2009.

The Plaintiff filed this adversary proceeding on July 17, 2009. [Doc. No. 1]. After the Plaintiff filed an amended complaint on September 25, 2009 [Doc. No. 19], the Defendant moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). [Doc. No. 20]. This court denied the motion to dismiss on December 2, 2009. [Doc. No. 28]. The Plaintiff now moves for summary judgment. [Doc. No. 41].

## II.    Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district provide this court with jurisdiction to hear and decide this adversary proceeding. The Plaintiffs' action regarding the dischargeability of particular debts is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## III.    Standard of Review

Federal Rule of Bankruptcy Procedure 7056 makes Federal Rule of Civil Procedure 56 applicable to bankruptcy adversary proceedings. *See* Fed. R. Bank. P. 7056. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435

(6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

**IV.     Analysis**

11 U.S.C. § 1328 states in relevant part:

(a) Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt – . . .
(2) of the kind specified in section 507(a)(8)(C)) or in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a); . . .

11 U.S.C. § 1328(a)(2). 11 U.S.C. § 523(a)(4) in turn states in relevant part: "A discharge under section ...1328(b) of this title does not discharge an individual debtor from any debt – . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . . 11 U.S.C. § 523(a)(4). Federal common law will determine the meaning of the terms "embezzlement" and "larceny." *See SmithKline Beecham Corp. v. Lam (In re Lam)*, No. 06-68805-MGD, 2008 WL 7842072, at *3 (Bankr. N.D. Ga. Mar. 27, 2008) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901 (7th Cir. 1991); *In re Wallace*, 840 F.2d 762 (10th Cir. 1988)) (other citations omitted). The creditor must prove by a preponderance of the evidence that a debt is nondischargeable under 11 U.S.C. § 523. *See Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct.

654, 659 (1991).

      **A.    Collateral Effect of State Court Final Order**

The question in this case is whether the issues that Plaintiff seeks to preclude the Defendant from litigating in this adversary proceeding were the same issues as those resolved by the state court in the Final Order. If the issues were identical, then the doctrine of collateral estoppel may preclude the Defendant from relitigating those issues here, if the other elements of collateral estoppel are satisfied. The parties do not dispute that the facts found in the Final Order have preclusive effect in this court.

The Full Faith and Credit Clause states in relevant part that: "[s]uch . . . judicial proceedings . . . so authenticated, shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The U.S. Supreme Court has clarified that whether an issue raised in a later federal court proceeding is precluded by a subsequent state court judgment must be determined by reviewing the law of the State that issued the judgment. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327 (1984). As the Supreme Court explained in *Marrese*,

> This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."

*Id.* at 380, 105 S.Ct. at 1332 (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897 (1982)); *see also, Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Further, the Supreme Court has also clarified that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan*, 498 U.S. at 285 n. 11, 111 S.Ct. at 658 n. 11.

Thus, Georgia law applies in determining the extent to which the Final Order issued against the Defendant has preclusive effect:

> "The doctrine of collateral estoppel precludes the readjudication of an issue of law or fact already adjudicated between the parties or their privies, where that issue is essential to the judgment." Collateral estoppel or issue preclusion prevents the relitigation of an issue that is identical to the one decided in a prior proceeding involving the same parties. When the doctrine of collateral estoppel applies, an issue previously litigated and adjudicated on the merits cannot be relitigated even as part of a different cause of action. . . .

*Austin v. Cohen*, 602 S.E.2d 146, 150 (Ga. Ct. App. 2004) (quotation and citations omitted).

Under Georgia law, the Plaintiff may demonstrate the elements of collateral estoppel by showing that the issue "was (1) raised in a prior proceeding, (2) actually litigated and decided, and (3) necessary to final judgment." *Hebbard v. Camacho (In re Camacho)*, 411 B.R. 496, 501 (Bankr. S.D. Ga. 2009) (citing *Boozer v. Higdon*, 313 S.E.2d 100, 102 (Ga. Sup. Ct. 1984)). Some federal bankruptcy courts in Georgia have also found a fourth element to the doctrine of collateral estoppel that "the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding . . . ." *In re Lam*, 2008 WL 7842072 at *4 (citing *League v. Graham (In re Graham)*, 191 B.R. 489, 495 (Bankr. N.D. Ga. 1996); *Dement v. Gunnin (In re Gunnin)*, 227 B.R. 332, 336 (Bankr. N.D. Ga. 1998)).[2]

This court must determine whether the issues decided by the Final Order preclude the Defendant from arguing that the debt owed to Plaintiff was not the result of embezzlement or larceny pursuant to 11 U.S.C. § 523(a)(4). Whether collateral estoppel applies must be determined by looking at Georgia law as a Georgia Superior Court entered the Final Order. *See Marrese*, 470 U.S. at 380, 105 S.Ct. at 1332. If the issues determined in the Final Order include

---

[2] Federal bankruptcy courts in Georgia appear to disagree regarding whether the fourth element is still recognized as a required element of collateral estoppel under Georgia law. *See In re Camacho*, 411 B.R. at 503 n.2 (describing history of case law and disagreement between federal bankruptcy courts in Georgia). Because this court concludes that Plaintiff fails to demonstrate the first element of collateral estoppel, it does not delve into whether the fourth element must be proven.

all of the elements necessary to demonstrate embezzlement or larceny, then as a matter of law, this court can hold that the damages awarded pursuant to the Final Order are non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). The court will analyze the elements required by both embezzlement and larceny in turn.

### B.  Embezzlement

The Sixth Circuit has explained that:

> [f]ederal law defines "embezzlement" under section 523(a)(4) as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud.

*Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996), *abrogated on other grounds as explained in National Development Servs. v. Denbleyker (In re Denbleyker)*, 251 B.R. 891 (Bankr. D. Colo. 2000) (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982) and *Moore v. United States*, 160 U.S. 268, 269, 16 S.Ct. 294, 295 (1895)) and (citing *Ball v. McDowell (In re McDowell)*, 162 B.R. 136, 140 (Bankr. N.D. Ohio 1993)). To demonstrate embezzlement a creditor must prove all three elements: "(1) 'that he entrusted his property to the debtor,' (2) that 'the debtor appropriated the property for a use other than that for which it was entrusted,' and (3) that 'the circumstances indicate fraud.'" *Cash America Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (quoting *In re Brady*, 101 F.3d at 1173). With respect to the third element, the Sixth Circuit has noted:

> The "fraud" required under § 523(a)(4) is "fraud in fact, involving moral turpitude or *intentional* wrong." Accordingly, embezzlement claims under § 523(a)(4) require "proof of the debtor's fraudulent intent in taking the [creditor's] property." As the *Brady* definition suggests, the debtor's fraudulent intent may often be shown by circumstantial evidence.

*In re Fox*, 370 B.R. at 116 (quotations and citations omitted).

In *In re Fox* the 6th Circuit Bankruptcy Appellate Panel provided helpful guidance

regarding the analysis of what is required to prove fraudulent intent for purposes of embezzlement under 11 U.S.C. § 523(a)(4):

> By requiring the Appellant to prove the elements of misrepresentational fraud in support of its embezzlement claim, the bankruptcy court imposed an overly restrictive definition of "circumstances indicating fraud." Fraud comes in many sizes, shapes, and shades of gray. In other contexts, courts have defined "fraud" as "encompass[ing] 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.'" Under this broad definition, a creditor may establish circumstances indicating a debtor's fraudulent intent, even if the debtor did not make a misrepresentation or misleading omission on which the creditor relied.
>
> This is not to say that a debtor's misrepresentations or omissions are irrelevant to the embezzlement analysis. To the contrary, misrepresentations, omissions, or other concealment of a debtor's actions regarding a creditor's property are important circumstances that might pierce the shadows to illuminate a debtor's fraudulent intent.
>
> On the other hand, a debtor's fraudulent intent might be negated by circumstantial evidence showing "that the debtor used [the creditor's property] openly, without attempting to conceal, and had reasonable grounds to believe he had the right to so use."

370 B.R. at 116-117 (quoting *Mellon Bank, N.A. v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) and *In re Weber*, 892 F.2d 534 (7th Cir. 1989), *abrogated on other grounds by Grogan*, 498 U.S. 279, 111 S.Ct. 654) (other quotations and citations omitted).

To determine whether the Final Order collaterally estops the Defendant from asserting that he did not embezzle the Plaintiff's car, the court must apply the collateral estoppel elements under Georgia law. The first element of collateral estoppel under Georgia law requires that there be an identity of issues. *See In re Camacho*, 411 B.R. at 501; *In re Lam*, 2008 WL 7842072 at *4. Embezzlement requires the Plaintiff to prove: (1) that he entrusted his property to the Defendant; (2) the Defendant appropriated the property for a use other than the use for which it was entrusted; and (3) under circumstances indicating fraud. *See In re Fox*, 370 B.R. at 116.

This court is limited by the facts as determined in the Final Order and the facts of record

pertaining to this adversary proceeding and the underlying Chapter 13 bankruptcy proceeding. These are the only undisputed facts between the parties. Therefore, this court can assume no other facts beyond what the Final Order itself describes or those to which the parties otherwise agree. With respect to the first element of embezzlement, the court concludes that the Final Order establishes this identical issue. The Final Order clearly indicates that the Plaintiff entrusted his 1999 Corvette to the Defendant. The Final Order states that "Plaintiff and Defendant entered into a contract in which Plaintiff would purchase a 1999 Corvette and then hire Defendant to make the conversion. Thus, Plaintiff purchased the vehicle and Defendant began working on the vehicle." Final Order, p. 1.

With respect to the second element of embezzlement, the court further concludes that the Final Order establishes the identical issue of whether the Defendant appropriated the property for a use other than the use entrusted to him by the Plaintiff, i.e. to convert the 1999 to a 1967 Corvette. The Final Order states that the:

> Defendant willfully and maliciously and without knowledge to the Plaintiff, cut off the body work which had been paid [for] by the Plaintiff. Defendant continued to withhold the vehicle from the Plaintiff for an extended period of time and did not return the same until suit had been filed. When Defendant returned the vehicle, it was basically without a body. . . .

Final Order, p. 2. The specific findings of willfulness, malice, and the Plaintiff's lack of knowledge clearly establish that the Defendant was not utilizing the Plaintiff's Corvette in the manner intended by the Plaintiff. Further, the determination that the Defendant "cut off the body work" for which the Plaintiff had already paid cements this court's conclusion that the Defendant used the Plaintiff's property in a manner that was other than the use entrusted to him by the Plaintiff. Thus, the court finds an identity of issues between the first two elements of embezzlement and the facts as established in the Final Order.

The final element of embezzlement, "under circumstances indicating fraud", is more difficult to discern from the language in the Final Order. As the Sixth Circuit explained in *In re*

*Fox* the third element of fraudulent intent requires at least circumstantial evidence of "deceit, artifice, trick or design." 370 B.R. at 116. Use of a creditor's property openly without an intent to conceal such actions may negate a finding of fraudulent intent. *Id.*

In this action the court does not know the details of the parties' initial agreement. The Final Order merely indicates that they "entered into a contract in which Plaintiff would purchase a 1999 Corvette and then hire Defendant to make the conversion." Final Order, p. 1. The court does not know pertinent facts such as: (1) the scope of the Defendant's work; (2) whether the defendant was to be compensated in cash or use of the molds; (3) whether a written contract existed; and (4) whether the contract allowed the Defendant to make molds of the 1967 Corvette so that he could replicate the Plaintiff's finished converted Corvette. Further, the Final Order does not describe the circumstances surrounding the Defendant's taking of the vehicle from the car show. The Final Order states that the "Defendant took the vehicle from the show." *Id.* at p. 2. It is not clear how the parties' altercation at the show concluded and whether they agreed that the Defendant should take the vehicle back to his place of business. It is also vague regarding what the Defendant told the Plaintiff with respect to the Plaintiff's right to receive the vehicle while he was making the molds and destroying the body work. The Final Order indicates that the Defendant cut off the body work "without knowledge to the Plaintiff," but it is unclear why the Plaintiff lacked knowledge. Did the Plaintiff lack knowledge because he was not there to witness the event or did he lack knowledge because the Defendant deceived him regarding the condition of the car? The Final Order leaves these questions unanswered. The court also cannot perceive, based on the Final Order, how much time elapsed between the end of the car show and the Defendant's destruction of the vehicle.

To find that Defendant is precluded, as a matter of law, from arguing that his debt to Plaintiff was not the result of embezzlement, the court must conclude that the Final Order clearly resolved the identical issue of fraudulent intent. Circumstantial evidence of fraud is sufficient,

but the court must have some evidence of the deceit or scheme to find fraudulent intent.  *In re Fox*, 370 B.R. at 116-117.  The Final Order contains insufficient facts to find fraudulent circumstances based on the lack of information regarding the parties' underlying contract, the Defendant's authority to make molds of the car, and the Defendant's withholding of the car from the Plaintiff.  The Final Order does not resolve all the identical issues necessary to a finding of embezzlement pursuant to 11 U.S.C. § 523(a)(4).   Because the Plaintiff cannot demonstrate the first element necessary for collateral estoppel to apply, the court does not need to address whether the other elements of collateral estoppel are satisfied.  For these reasons, the court will **DENY** the Plaintiff's summary judgment motion as it relates to embezzlement.

    **C.**    **Larceny**

For purposes of 11 U.S.C. § 523(a)(4):

> [l]arceny can be defined as the actual or constructive taking away of property of another without the consent and against the will of the owner or possessor with the intent to convert the property to the use of someone other than the owner. Larceny for purposes of § 523(a)(4) requires proof that the debtor wrongfully and with fraudulent intent took property from its rightful owner.  As distinguished from embezzlement, the original taking of the property must be unlawful.  Larceny is commonly understood to be synonymous with theft.  For example, larceny occurs when a thief breaks into a home and steals jewelry for the purpose of converting it to cash for his/her own use.

*Morganroth & Morganroth, PLLC, v. Stollman (In re Stollman)*, 404 B.R. 244, 271 (Bankr. E.D. Mich. 2009) (quoting *General Motors Acceptance Corp. v. Cline*, No. 4:07cv2576, 2008 WL 2740777, at *4 (N.D. Ohio, July 3, 2008)).  The court in *In re Stollman* explained the difference between embezzlement and larceny:

> Larceny is different in that the original taking must have been unlawful, and is defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner.

404 B.R. at 271 (quoting *Williams v. Noblit (In re Noblit)*, 327 B.R. 307, 311 (Bankr. E.D. Mich. 2005)).  "Larceny under § 523(a)(4) is proved if the debtor wrongfully and with fraudulent intent

takes property from its rightful owner, and differs from embezzlement because the embezzler's initial acquisition of the property at issue is lawful." *Tomblin v. Robbins (In re Robbins)*, No. 06-3067, 2007 WL 1174334, at *9 (Bankr. E.D. Tenn. Apr. 19, 2007) (citing *Great Am. Ins. Co. v. O'Brien (In re O'Brien)*, 154 B.R. 480, 483 (Bankr. W.D. Tenn. 1993) and *Aristocrat Lakewood Nursing Home v. Dryja (In re Dryja)*, 259 B.R. 629, 632 (Bankr. N.D. Ohio 2001)).

Again, this court must determine whether the issues regarding non-dischargeability for larceny are identical to the issues established by the Final Order. *See In re Camacho*, 411 B.R. at 501; *In re Lam*, 2008 WL 7842072 at *4. If the issues were identical, then collateral estoppel may preclude the Defendant from relitigating those issues here. For larceny to be proven, the original taking of the property must have been unlawful or without permission. *See In re Stollman*, 404 B.R. at 271. Larceny then requires that a creditor demonstrate the debtor intended to convert the property for his own use without the consent of the owner. *Id.*

With respect to the first element the court concludes that the Defendant's initial taking of the 1999 Corvette was not unlawful because it was taken with the Plaintiff's consent and permission pursuant to the parties' contract. It is a closer question, however, whether the Defendant's second taking of the vehicle was without permission. Although the Final Order suggests that the parties argued at the car show regarding whether the Plaintiff had the authority to sell the Corvette, the Final Order does not clearly find that the Defendant took the car from the show without the permission of the Plaintiff. The Final Order states only that "Defendant took the vehicle from the show." Therefore, the court cannot conclude, based on this simple finding of fact, that the Defendant took the car from the car show without the Plaintiff's permission.

In addition, as with embezzlement, the Plaintiff must also demonstrate fraudulent intent as an element of larceny. *See In re Stollman*, 404 B.R. at 271; *In re Robbins*, 2007 WL 1174334 at *9. For the reasons explained *supra*, the court concludes that the Final Order does

not establish the requisite intent.  The issues resolved in the Final Order are thus not identical to the issues necessary to a determination of larceny.  The court need not address whether the other elements of collateral estoppel are met.  The court will **DENY** the Plaintiff's motion for summary judgment regarding whether the Defendant committed larceny.

### V. Conclusion

As described *supra*, the court will **DENY** the Plaintiff's motion for summary judgment regarding whether the damages awarded pursuant to the Final Order constitute a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4) and 11 U.S.C. § 1328(a)(2).  The court concludes that the Final Order does not preclude the Defendant from litigating at trial whether his debt to Plaintiff was the result of embezzlement or larceny.  Genuine issues of material fact exist regarding whether the Defendant acted with the fraudulent intent needed to establish embezzlement and larceny and whether he took the vehicle without permission to establish larceny pursuant to 11 U.S.C. § 523(a)(4).

A separate order will enter.